829 So.2d 763 (2002)
Rebecca W. FOUNTAIN
v.
Clarence C. FOUNTAIN III.
2001120.
Court of Civil Appeals of Alabama.
March 15, 2002.
*765 William P. Burgess, Jr., Huntsville, for appellant.
Susan C. Conlon, Huntsville, for appellee.
YATES, Presiding Judge.
Clarence C. Fountain III sued Rebecca W. Fountain on October 26, 2000, seeking a divorce and alleging an incompatibility of temperament. The husband sought an equitable division of the parties' assets and liabilities. On November 9, 2000, the wife answered and counterclaimed, seeking a divorce and alleging an incompatibility of temperament. The wife sought primary physical custody of the parties' two children; postminority educational support for the children; periodic alimony; child support; an equitable division of the parties' property; and an attorney fee. Following an ore tenus proceeding, the trial court entered the following order, stating, in part:
"3. The [wife] is to have the primary residential custody of the parties' minor child.... The [husband] is to have joint legal custody of [the minor child] with visitation with the said minor child pursuant to the schedule attached hereto and made a part hereof as Exhibit `A'. Child support for the said minor child,... is to be paid by the [husband] to the [wife] in the amount of SIX HUNDRED and THIRTY TWO DOLLARS ($632.00) per month, on the first (1st) day of each month beginning July 1, 2001. Child support is to be paid through Family Court of Madison County, Alabama, pursuant to Rule 32, Alabama Rules of Judicial Administration, using $6,090.00 per month as the gross income of the [husband] and $2,500.00 per month as the gross income of the [wife]. The [husband] is to provide medical insurance for the parties' minor child to the extent that it is available at his place of employment. Currently [the] health insurance premium is $95.00 per month. Each party is to equally divide health insurance costs for [the minor child] that are not covered by [the husband's] health insurance policy. The [husband] is to reimburse the [wife] for $247.00 of the $494.00 that the [wife] has paid to Dr. Tipton.
"4. Each party is to retain the personal property in his or her own possession. The [husband] is to retain title to the 1986 Ford Bronco and the 1985 Ford Ranger Truck. The [wife] is to have exclusive title to the 1992 Ford Aerostar Van. Each party is to be solely responsible for indebtedness in his or her own name. The [wife] is to be solely responsible for the indebtedness on the Redstone Astro Loan and on the Discover *766 Card. The [husband] is to be solely responsible for [the] indebtedness to his parents in the approximate amount of $9,000.00, borrowed for the addition of a laundry room to the marital residence.
"5. No college support is ordered for [the children] due to their lack of aptitude and commitment to and aptitude for a college education. The Court has considered all of the factors in Ex parte Bayliss, [550] So.2d 986 (Ala.1989).
"6. The [husband] is to claim [the minor child] and the [wife] is to claim [the child who is over the age of majority] as dependents for state and federal income tax purposes.
"7. The [wife] is to have the exclusive title to the parties' home at 616 Vance Road, Huntsville, Alabama.... The [wife] is to be solely responsible for the remaining indebtedness thereon including principal, interest, taxes and insurance. The [husband] is to have exclusive title to his one-fourth (1/4) interest in real property which he and his family own in Escambia County.
"8. The [husband] is to pay the [wife] $2,400.00 from the sale of the seventy (70) shares of Dean Foods stock that he sold.
"9. The [husband's] current company life insurance policy with a face value of approximately $110,000 and Protective Life Insurance policy with a face value of $200,000 should be maintained by the [husband] with [the children] named as beneficiaries so long as [the one child] is a minor. The ownership of the Northwestern Mutual life insurance policy on the [husband's] life is to be transferred by the [husband] to the [wife] with exclusive access by the [wife] to the cash value in the approximate value of $7,500.00.
"10. No periodic alimony is awarded to the [wife]. This Court has considered the factors involving the award of periodic alimony set forth in cases such as McLendon v. McLendon, 420 So.2d 266 (Ala.Civ.App.), cert. denied (Ala.1982) and Broadnax v. Broadnax, 558 So.2d 929 (Ala.Civ.App.1989). The [husband] did not willfully violate this Court's standing pendente lite order.
"11. The [wife] is to receive fifty percent (50%) of the December 31, 2000, 401(k) Dean Foods hardship withdrawal amount, that is $20,000.00, from the [husband]. The [husband] is to retain all benefits due to him from his pension plan at Dean Foods.
"12. Each party is to bear their own costs, including attorney's fees."
The wife appeals.
The wife initially argues that the trial court erred in awarding the husband the right to claim the income-tax dependency exemption for the parties' minor daughter, without stating its reasons for deviating from Rule 32, Ala. R. Jud. Admin. We agree. Two children were born of this marriage: a son, who was a minor at the time the complaint for divorce was filed, but who had reached the age of majority at the time of trial, and a daughter, who was 16 years old at the time of trial. Both the son, who was unemployed at the time of trial, and the daughter resided with the wife. The trial court awarded primary physical custody of the daughter to the wife, however, it allowed the husband to claim the income-tax dependency exemption for the daughter. The record indicates that the son is wholly dependent upon the wife. The court awarded the wife the right to claim the income-tax dependency exemption for the son. The award of the income-tax dependency exemption is a matter of discretion for the trial court. Flanagan v. Flanagan, 656 So.2d 1228 (Ala.Civ.App.1995). The Comment to Rule 32, Ala. R. Jud. Admin., states that it is assumed that the custodial *767 parent will take the income-tax exemption for the child in his or her custody. Id. In deviating from the Rule 32 guidelines by awarding the tax exemption to the noncustodial parent, the trial court must comply with Rule 32(A)(ii), by stating its reasons for doing so. The trial court apparently granted the right to claim the income-tax dependency exemption for the daughter to the husband because it granted the wife the right to claim the income-tax dependency exemption for the son. However, despite our understanding of the court's reasoning, compliance with Rule 32 is mandatory; therefore, we have no choice but to reverse the judgment awarding the tax exemption for the daughter to the husband and to remand the case for the trial court to comply with Rule 32, Ala. R. Jud. Admin.
The wife next argues that the trial court erred in denying postminority educational support to the daughter, because, she says, that issue was premature, because the daughter was only 16 years old at the time of trial, she had not completed the 11th grade, and she had not yet made plans to attend college. We agree. At the time of the trial, the daughter was attending summer school in order to complete her 11th-grade course work. She had been diagnosed with attention deficit disorder ("ADD") and other "learning disabilities" and had been enrolled in special education classes. The daughter was removed from high school in January 2001 and attended an alternative learning program two days per week for two hours per day through May 2001. Both parties anticipate her returning to high school and graduating.
Ex parte Bayliss, 550 So.2d 986 (Ala.1989), permits an award of postminority educational expenses to a child when a party petitions for such expenses before the child reaches the age of majority. Pursuant to Ex parte Bayliss, the trial court has the discretion to award postminority educational support and, in exercising that discretion, the court shall consider "`all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education.'" Stinson v. Stinson, 729 So.2d 864, 868 (Ala.Civ.App.1998), quoting Ex parte Bayliss, 550 So.2d at 987. Further, the trial court may consider "`the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance.'" Stinson, 729 So.2d at 868, quoting Ex parte Bayliss, 550 So.2d at 987. Postminority educational support may be awarded for vocational or technical training. Barnes v. Barnes, 695 So.2d 1204 (Ala.Civ.App.1997).
No evidence was presented regarding the daughter's plans for obtaining a post-secondary education or other training. No evidence was presented to the court indicating an aptitude for, or a commitment to, obtaining a vocational education or technical training, nor was any evidence presented indicating the expenses that would be associated with obtaining such training. A determination by the court as to whether to grant an award of postminority educational support prior to the child's having reached, or nearly reaching, graduation from high school and before all the relevant factors have been presented to and considered by the court is premature. See Mansmann v. State ex rel. Eiland, 590 So.2d 308 (Ala.Civ.App.1991). Accordingly, we conclude that the trial court abused its discretion in denying postminority educational support to the daughter at this point; therefore, we must *768 reverse this portion of the trial court's judgment.
The wife next argues that the trial court erred when it failed to reserve jurisdiction to determine the issue of postminority educational support for the son.[1] At the time of the trial, the son had graduated from high school and was unemployed. He lived with the wife and she stated that he drank beer, smoked cigarettes, stayed up late, and slept late. He had been diagnosed with ADD and was in special education classes while in school. The son had graduated near the bottom of his class, had not taken any college-entrance exams, and had not applied to any college or trade school. The wife testified that the son had expressed some interest in attending Wallace State Community College in Cullman or Shelton State Community College in Tuscaloosa. Because the son has graduated from high school and has demonstrated no commitment for obtaining a higher education, we cannot say that the trial court abused its discretion in denying postminority educational support to him and in failing to reserve jurisdiction over the matter. Accordingly, the trial court's judgment is affirmed as to this issue.
The wife next argues that the trial court erred in failing to award her periodic alimony. She also argues that the trial court erred in failing to award her any interest in the husband's pension, and in failing to award her only a 22% interest in his 401(k) plan. In reviewing a judgment of the trial court in a divorce case where the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule. Under this rule, the trial court's judgment based on those findings will be presumed correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v. Hartzell, 623 So.2d 323 (Ala.Civ.App. 1993). This presumption of correctness is based on the trial court's unique position of being able to observe the witnesses and to assess their demeanor and credibility. Hall v. Mazzone, 486 So.2d 408 (Ala.1986). Additionally, matters of alimony and property division rest soundly within the trial court's discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion. Welch v. Welch, 636 So.2d 464 (Ala.Civ.App.1994). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064 (Ala. Civ.App.1995). Factors the trial court should consider in its award of alimony and its division of property include the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; their station in life; the marital properties and their sources, values and types; and the conduct of the parties in relation to the marriage. Id., at 1067. Further, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Id.
The parties were married in May 1979; they separated in December 1999. The husband attributed the breakdown of the marriage to a lack of communication, no "planning" or "goal setting," financial differences, clutter about the house, and differences on the frequency of sex. The wife stated that the husband just got tired *769 of the commitment and financial responsibility that it took to be part of the family.
At the time of the trial, the husband was 47 years old and had graduated from college. He was employed with Purity Dairies in a management position earning approximately $73,080 per year. He has medical and dental insurance through his employment. He also has a 401(k) plan in which he had accumulated $90,228.74 during the course of the marriage. Additionally, the husband was eligible for a pension plan through his employment that was initiated in January 1999; however, he testified that he presently had no interest in the plan. He had a $25,000 life insurance policy issued by Northwestern Mutual, which had a cash value of $7,500. The wife was the beneficiary of that policy and also paid the premiums on it.[2] The husband has no savings account. He testified that he was in excellent health.
The wife was 44 years old at the time of trial and had graduated from college. She worked off and on during the marriage and was employed at the time of the trial at Banton Appraisals, where she has been working since 1997. She has a yearly income of $30,000, with a monthly net income of $1,916.38. She has no medical insurance or retirement plan with her current employer. She is insured only as a dependent on the husband's medical insurance. The wife has no savings account. She has had some health problems, including migraine headaches, depression, and allergies. She has also been diagnosed with ADD. The wife has been prescribed Prozac, Ritalin, Claritan, Nasanex, and estrogen for her various conditions. She testified that her medical conditions have never caused her to miss work and that the medications she is taking have no side effects that cause her to miss work.
The parties' marital home has an outstanding balance owing on the mortgage of $62,000; the monthly mortgage payments are $600. Approximately $30,000 in equity has accumulated in the home and the fair market value of the home is approximately $90,000 to $100,000. The husband testified that the exterior of the home is in poor shape and that the roof was damaged in a hailstorm. He stated that the insurance company had paid $1,423 to repair the roof, however, the repair work had not been done. The husband also testified that despite having two lawnmowers at home, the grass had not been cut and that it was approximately a foot high. He stated that the home would have to be cleaned up and a "good bit of work done" before it would be marketable.
The husband owns a 1/4 interest in 90 acres of unimproved land located in Escambia County that was given to him by his parents in 1997. He estimated that his interest in the land was valued at approximately $15,000. Additionally, the husband and the wife agreed to sell 70 shares of the husband's company stock during the pendency of the divorce for $2,400.
The parties had a joint debt of $9,000 plus interest to the husband's parents. These funds had been used to build a laundry room onto the marital home. The parties also had an outstanding loan from Redstone Federal Credit Union for approximately $300. These funds were used to purchase a computer, which is in the wife's possession. The wife has a debt of approximately $7,000 on a Discover Card credit card that is solely in her name. She did not state what portion of the debt on *770 the credit card was attributable to the husband. The husband testified that he has never had access to that credit card. Additionally, a balance of approximately $6,500 is owed on the wife's vehicle loan; her monthly payments are $183.76.
The wife submitted an anticipated monthly budget to the court indicating her approximate monthly expenses to be $3,050. She contends in her brief that without financial assistance from the husband she will be unable to meet the monthly expenses incurred by her and the daughter. Included in those expenses are $200 for food for the son, who is unemployed and who contributes nothing to the household income. The budget also includes a $100 gym membership for the wife and children; $40 for various contributions that she is not currently making; $100 for gifts that she is not currently buying; and $40 for a housekeeper.
The trial court awarded the wife the parties' marital home, including the $30,000 in equity accumulated thereon, and made the wife liable for the outstanding indebtedness on the home. Additionally, the court awarded the wife the cash value of the husband's life insurance policy, which equaled $7,500 and the proceeds of $2,400 from the sale of the stock. The court also awarded the wife $20,000 of the husband's 401(k) plan, which represented one-half of the hardship withdrawal amount. The husband was awarded his 1/4 interest in the land located in Escambia County and the balance of his 401(k) plan. The wife was ordered to pay the $7,000 debt incurred by her on the Discover card, and the husband was ordered to pay the $9,000 debt owed to his parents.
After carefully reviewing the record, we cannot say that the trial court abused its discretion in not awarding the wife periodic alimony. However, based on the length of the parties' marriage, the disparity of the parties' income, and the wife's current medical condition, we conclude that the court abused its discretion in failing to at least reserve the right to award alimony in the future. See Grice v. Grice, 673 So.2d 772 (Ala.Civ.App.1995). Upon remand, the trial court is directed to amend its divorce judgment to specifically reserve the right to award periodic alimony in the future.
We further conclude that the trial court erred in awarding the wife only $20,000 of the husband's 401(k) plan, which was valued at $90,228.74. The wife has no retirement plan or account through her employer. She served as the primary child rearer and homemaker during periods of the marriage when she was not employed. During this time, the husband was able to advance his career and increase his earnings. The wife supported the husband willingly when the family was required to relocate in order to advance his career opportunities. Accordingly, this portion of the trial court's judgment is reversed.
The wife next argues that the trial court erred in failing to award her COBRA medical insurance benefits. She has no medical insurance through her employer; the only medical coverage she had was through her husband, which ends upon divorce. The wife has some medical conditions for which she is taking medication. The husband testified that he did not want to provide COBRA coverage for the wife even though he knew that it would be difficult for her to pay the monthly home mortgage if she had to pay for her medical insurance. We conclude that the trial court abused its discretion in failing to require the husband to provide the wife with medical insurance. Upon remand the court is ordered to require the husband to provide COBRA coverage to the wife for the maximum period of time provided by law.
*771 The wife next argues that the trial court erred in failing to award her an attorney fee. An attorney fee may be allowed in a divorce case, in the discretion of the trial court. Holmes v. Holmes, 487 So.2d 950 (Ala.Civ.App.1986). We cannot say that the trial court abused its discretion in failing to award the wife an attorney fee.
The wife's request for an attorney fee on appeal is granted in the amount $1,500.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
MURDOCK, J., concurs.
THOMPSON, J., concurs in the result.
CRAWLEY and PITTMAN, JJ., concur in part and dissent in part.
CRAWLEY, Judge, concurring in part and dissenting in part.
I concur in those portions of the opinion relating to the income-tax dependency issue, the post-minority educational support issues, and the attorney-fee issue. However, I dissent as to the remainder of the opinion.
The trial court did not err in failing to reserve the issue of periodic alimony. Based upon the wife's testimony that her medical condition did not prevent her from working, the court could have concluded that there was no sound reason to reserve the issue of periodic alimony.
The trial court did not err in awarding the wife only $20,000 of the husband's 401(k) plan. The wife was awarded the $30,000 equity in the marital home. These two amounts combined exceed one-half of the 401(k) plan. Compare § 30-2-51(b)(3), Ala.Code 1975 (limiting the award of retirement benefits payable to the noncovered spouse to 50%).
The trial court did not err in failing to require the husband to pay the wife COBRA medical insurance benefits. The wife presented no evidence of the cost of this insurance and, therefore, this court cannot make a reasoned determination as to whether the failure to award the benefit was erroneous. The wife was awarded $2,400 from the sale of the Dean Food stock and the ownership of an insurance policy that had a cash value of $7,500. The judge could have concluded that $9,900 would be sufficient to pay the insurance premium for the maximum 36 months available under COBRA.
PITTMAN, J., concurs.
NOTES
[1] As noted above, the son had reached the age of majority at the time of the trial; however, the petition for postminority educational support was filed before he turned 19 years old. Therefore, the trial court had jurisdiction to hear the matter. Ex parte Bayliss, supra.
[2] The husband also had a life insurance policy through his employer equal to one and one-half times his annual salary. He also had another $200,000 life policy issued by Protective Life. The wife was the beneficiary of those two policies; however, the trial court ordered that the parties' two children be made the beneficiaries of those two policies.