MOORE, Judge.
Wendi A. Henderson (“the wife”) appeals from a judgment of the Cullman Circuit Court (“the trial court”) divorcing her from Kerry Henderson (“the husband”). We affirm the trial court’s judgment in part and reverse it in part.
Procedural History
On June 7, 2013, the husband filed a complaint for a divorce from the wife, seeking, among other things, an equitable division of the parties’ real and personal property, an award of joint legal and physical custody of the parties’ two minor children, and attorney’s fees. The wife filed an answer and a counterclaim seeking a divorce; the wife sought sole physical custody of the parties’ minor children, an award of periodic alimony, and attorney’s fees. The wife also filed a verified motion for temporary, pendente lite relief, seeking, among other things, exclusive possession of the marital home, sole physical custody of the parties’ minor children, child support, and periodic alimony. The wife also requested that any visitation between the husband and the minor children be supervised. On August 16, 2013, the trial court entered a pendente lite order that, among other things, awarded physical custody of the minor children to the wife, ordered the husband to pay child support to the wife in the amount of $1,048 per month, and ordered the husband to continue paying certain monthly bills as pendente lite periodic alimony. On November 8, 2013, the husband filed a motion seeking a pendente lite order reducing the amount of child support he had been ordered to pay in the trial court’s August 16, 2013, order because one of the parties’ children had reached the age of majority. On December 23, 2013, the trial court entered an order confirming that the parties’ child had reached the age of majority, leaving only one minor child of the marriage, and reducing the amount of the husband’s pendente lite child-support obligation to $700 per month. The trial court entered an order on August 21, 2015, *65 indicating that the case had been called for trial on August 20, 2015, that direct testimony of the husband had been completed, and that, at the parties’ request, the trial had been recessed by agreement.
On December 14, 2015, the trial court entered an order indicating that the case had been recalled for trial on that date and that ore tenus testimony had been presented and concluded. The trial court granted the husband’s claim for a divorce based on the ground of incompatibility of temperament and reserved all remaining issues for a judgment to be entered after each party submitted his or her list of specific requests for relief within two weeks of the date of the order. The parties submitted their requested lists as ordered, and, on January 14, 2016, the trial court entered a final judgment of divorce. In its judgment, the trial court awarded the parties joint legal custody of the parties’ minor child, with the wife having sole physical custody[1] and the husband having visitation “as the parties agree, with [the husband] having the right to alternate weekend visits in the event no agreement can be made.” Additionally, the trial court ordered the husband to pay child support to the wife in the amount of $755 per month; required the husband to provide medical-insurance coverage through his employment for the parties’ minor child; required the parties to divide evenly any additional medical expenses incurred on behalf of the minor child that are not covered by insurance; entitled the husband to claim the minor child as a dependent for income-tax purposes; ordered the husband to pay the wife periodic alimony in the amount of $650 per month until the wife remarries or a period of 60 months has elapsed, whichever first occurs; awarded sole title in the marital home to the wife and required the husband to pay the outstanding mortgage balance thereon; required the parties to equally divide any remaining balance in their joint savings account and any income-tax refund for tax year 2014; allowed each party to retain in his or her possession any personalty held at the time of the entry of the judgment, except that the husband “shall be entitled to retrieve any personal jewelry, clothing, ancestral pictures or items which he chooses from the marital residence within 30 days” of the entry of the judgment; and required each party to pay his or her own attorney’s fees. The wife filed a motion to alter, amend, or vacate the trial court’s judgment on February 9, 2016. The trial court entered an order denying the wife’s postjudgment motion on February 11, 2016. The wife timely filed her notice of appeal to this court.
Facts
The parties were married on July 15, 1990, and lived together as husband and wife until they separated on April 10, 2013. The parties had four children during the marriage, but, at the time of the trial, only one of the children (“the child”) had not yet reached the age of majority. The husband testified that he lives in Pulaski, Tennessee, where he teaches math and coaches football, earning approximately $4,299.29 per month. According to the husband, he has a bachelor’s degree and a master’s degree and he began teaching in Alabama after he graduated from college in 1987. The husband stated that he began contributing to a retirement account in Alabama before he and the wife married and that, at the time of the trial, he had retired from teaching in Alabama in 2012 and was earning $2,838.79 a month in retirement benefits. The husband testified *66 that the wife had ■ graduated from high school-and had completed a few college courses but that she had not graduated from college. Although the wife testified that she and the husband had planned to move to Tennessee following the husband’s retirement, she stated that, when the husband moved to Tennessee in the summer of 2012, she had refused to move with him.
The husband testified that he had wanted the parties’ children to attend public, school but that the wife had insisted that the children be homeschooled and' had refused to get a job because she was homeschooling the children. He stated that he felt that he had been denied certain educational jobs as a result of his children not being enrolled in public school and that that had caused a number of problems in the parties’ marriage. According to the husband, he and the wife had not had marital relations since 2004. He stated that he had received a telephone call regarding the wife’s involvement with another man in 2004, .that he had discussed that conversation with the wife, and that he had assumed that her response indicated that she was claiming- that nothing was going on between her and the other man. The husband stated that he had received another telephone call in 2011 that had led him to ask the wife whether she had been having an extramarital affair with a different man, which she had denied. He testified that, despite the wife’s denial, he had formed a judgment that the wife had been having some type of relationship with that man, although the wife testified that that had not been the case. The-husband testified that the wife had gone on a number of trips without -him, including to the west coast, Florida, Japan, Hawaii, New York; the Smoky Mountains, and on a cruise.
According to the husband, the wife was working part time at the time of the trial. He stated that he had not known that the wife was earning any money until he had completed the parties’ 2012 income-tax returns, that the wife had hidden from him the fact that she was working and earning money, and that he had not known that she had additional .bank accounts where she was keeping her earnings. The husband testified that, while he was in Tennessee, he had continued to pay for the wife to live in the marital home. He stated that his Alabama retirement checks had been directly deposited into the parties’ joint checking account and that the wife had removed over $2,300 from that account. He stated that that had led him to begin paying the bills himself and that the wife had objected. According to the husband, the parties’ had received approximately $661 for their 2012 income-tax refund and he had never seen any of that money. The husband testified that he had purchased a new truck in April 2016 after his other vehicle had fallen into such disrepair that replacing if was more economical than fixing it. He stated that he had continued to pay certain bills for the wife and some of 'the parties’ children, including cellular-telephone bills, medical-insurance and automobile-insurance premiums, and vehicle-tag renewal/registration fees. He stated that he had also paid taxes on the purchase of a new vehicle for the child and had paid the child’s medical bills, which averaged approximately $400 per month.
The wife testified that she and the husband had agreed' before they were married that she would be a stay-at-home mother and that she would homeschool the parties’ children. She testified that, at the time of the trial, she was working for a medical-imaging center and was earning approximately $600 per month working 20 hours per week. The wife stated, however, that she has health problems that prevent her from working full time. She testified that she had been diagnosed with melanoma cancer on her leg when she was pregnant *67 with her first son in 1991 and that the melanoma had been surgically removed, which had caused vein problems in her leg that affect her ability to stand on her feet because her leg swells and begins to hurt. The wife testified also that her spine is not in alignment in her lower back, that.her back problems had begun when she was pregnant with the parties’ third child, who was born in 1994, and that she continued to be under care for that condition. She admitted, however, that she had never gone to see a neurosurgeon or an ortho-paedic surgeon for that condition and that, on one of her visits with a doctor, the doctor had written down that the wife had reported a pain level of 2 out of 10.
According to the wife, she had discovered the husband looking at pornography in 2000. She testified that there had been icons of naked women on the computer, which had been purchased for the use of the entire family. The wife stated that she had also viewed e-mails from women to the husband on that computer. According to the wife, after she had confronted the husband, he had brought home a laptop computer that he had said was a work computer, but, she said, she had accessed the laptop and had discovered pornography, receipts for a male-enhancement supplement, and women’s e-mail addresses, telephone numbers, and street addresses, which, she testified, indicated to her that the husband was going to meet them. The husband denied ever having met a woman he had corresponded with online. The wife testified that she had been too scared to confront the husband because he has a temper and because he had been very angry when she had initially confronted him about the pornography. She stated also that, approximately five to eight times a year, the husband had gone missing for days and would not call her. The wife testified that she .and the husband had not had sexual relations since July 2004. She stated that,- in July 2004, the parties had gone to Huntsville for .their anniversary month and had stayed in a hotel, that she had told the husband that that was not a good time for the trip and that she could not have sexual relations with him during that time for female reasons, but that he had forced sexual contact with her twice during the trip despite her crying, telling him that he was hurting her, and asking him to stop.
The wife testified that' the husband had informed her that he had not been hired for certain jobs because the parties’ children had not been enrolled in public school, but, she said, she had not believed him. She stated that she had initially spoken with the husband in 2004 about obtaining a divorce. She stated, however, that she had not asked for a divorce after discovering the pornography or the e-mails, but, she said, the long-term effects of the pornography had led to the divorce. According to the wife, the parties’ children had been aware of the husband’s looking at pornography.
With regard to the marital home, the husband testified that his parents had deeded him a parcel of property before he and the wife married and that, after he and the wife were married, he had conveyed' that parcel of property to himself and the wife with the joint right of surviv-orship. The husband testified that they had built a house on that property and, he said, at the timé of the trial, he had consolidated the mortgage on that property with other debt and owed approximately $4,500 to the bank for that loan, on which he made $500 payments each month. The husband presented evidence indicating that the marital home had been appraised for $91,200. He stated that the wife had continued to live in the marital home after he had moved to Tennessee and that he owned no other real estate. According to the husband, the mar *68 ital home had been in good condition when he moved to Tennessee in 2012, and, he said, he did not know of any items that had needed maintenance or repairs at that time. The husband testified that he would like to sell the house and divide the equity received from the sale. The wife testified, however, that she believed the value of the marital home was approximately $65,000, because, she said, it had not been maintained since 2003. She testified that, among other things, the house had some foundation issues.
Standard of Review
Because the evidence in this case was presented ore tenus, our standard of review is as follows:
“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.”” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala. 2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala. 2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala. 2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala. 1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala. 2007). Legal conclusions, however, are subject to de novo review. Walker v. Walker, 144 So.3d 359, 364 (Ala. Civ. App. 2013).
Analysis
The wife first argues on appeal that the trial court erred in its distribution of the marital estate and in its award of periodic alimony.
“The issues of property division and alimony are interrelated, and they must be considered together. Albertson v. Albertson, 678 So.2d 118 (Ala. Civ. App. 1995). A property division is not required to be equal, but it must be equitable. Golden v. Golden, 681 So.2d 605 (Ala. Civ. App. 1996). In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages and health; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, [795 So.2d 729 (Ala. Civ. App. 2001)]; Lutz v. Lutz, 485 So.2d 1174 (Ala. Civ. App. 1986). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility, or, as here, where the trial court failed to specify the grounds upon which it based its divorce judgment. Ex parte Drummond, 785 So.2d 358 (Ala. 2000); Myrick v. Myrick, 714 So.2d 311 (Ala. Civ. App. 1998); Lutz v. Lutz, supra.”
Pate v. Pate, 849 So.2d 972, 976 (Ala. Civ. App. 2002).
The wife cites Fountain v. Fountain, 829 So.2d 763 (Ala. Civ. App. 2002), and McGowin v. McGowin, 991 So.2d 735 (Ala. Civ. App. 2008), in support of her assertion that the property-division and alimony awards are inequitable. In Fountain, this court reversed the trial court’s judgment *69 for awarding the wife only $20,000 of the husband’s 401(k) plan, which was valued at $90,228.74. 829 So.2d at 770. Observing that the wife had served as the primary child-rearer and homemaker during periods of the marriage when she was not employed and that she had no retirement plan, this court reversed the judgment for a more equitable award of the husband’s 401(k) plan. Id. This court affirmed, however, the trial court’s decision not to award the wife periodic alimony in light of its award of the marital home to the wife, which award included $30,000 in equity that had been accumulated thereon, and other monetary awards. Id. In McGowin, this court concluded that, although the trial court had essentially equally divided the parties’ marital property, the trial court had erred in awarding the wife only $3,000 per month in rehabilitative alimony for 18 months and $1,500 per month thereafter when the husband’s income since 2003 had averaged over $40,000 per month, the alimony award was insufficient to allow the wife to meet her monthly expenses, the wife had not worked outside the home while the husband had pursued a successful legal career, and the parties had enjoyed an elevated standard of living during the marriage. 991 So.2d at 743-45.
The wife argues that the husband’s superior earning capacity, the wife’s lack of employment during the marriage and her health, and the husband’s conduct during the marriage all weigh heavily in her favor with regard to • the issues of the division of the marital property and the alimony award. With regard to the wife’s health, the trial court could have considered the husband’s testimony that the wife had seen a chiropractor but that he had never been given any reason to believe that the wife was incapable of working, despite her testimony that her problems arising from melanoma had been present since 1991 and her back problems had been present since 1994. The trial court also could have considered that, despite the presence of those conditions throughout the majority of the marriage, the wife had been able to hold part-time jobs, travel independently, and homeschool and raise all four of the parties’ children. Additionally, the wife admitted that her doctor’s notes indicated that, in January 14, 2013, she had reported a low level of pain. The trial court had the-benefit of observing the wife during the court proceedings. “The presumption of correctness under the ore tenus rule ‘is based on the trial court’s unique position to observe -the witnesses and to assess their demeanor and credibility.’ ” Williams v. Williams, 905 So.2d 820, 826 (Ala. Civ. App. 2004) (quoting Glazner v. Glazner, 807 So.2d 555, 559 (Ala. Civ. App. 2001)). Accordingly, the trial court was within its discretion to discount the wife’s testimony that she was unable to work full time and earn additional wages toward her monthly expenses.
The wife also testified that the marriage had deteriorated as a result of the husband’s viewing pornography and his sexual abuse of her in July 2004. The husband testified that he did not begin looking at pornography until after the wife had discontinued having sexual relations with him. He stated that he had never met any women that he had corresponded with online and that he had never contacted them in person or on the telephone. The husband also testified' that he had never been physically abusive’toward the wife. Additionally, the trial court could have considered the wife’s testimony that she had discovered" the husband looking at pornography beginning in 2000 and that he had sexually abused her in 2004, yet she had never filed for a divorce from the husband. Additionally, the husband testified that he had been contacted twice during the parties’ marriage by different people *70 .regarding the wife’s alleged infidelity with different.men. Given the varying testimony regarding the reasons for the deterioration of the marriage, the trial court could have declined to-consider the testimony of either or both parties regarding the parties’ alleged conduct and could have discounted their assertions regarding the purported breakdown of the marriage.
The husband testified that he had wanted the parties’ children to attend public school but that the wife had wanted to homeschool the children and, thus, could not work full time. He testified that his gross income from his-employment in Tennessee amounts to $4,299.29 monthly; that, after taxes, Medicare payments, and medical insurance is deducted, he earns a net income of $2,857.80 in Tennessee; that his gross retirement income from Alabama is $2,838.79 monthly; and that his net retirement income after deductions for taxes and -medical insurance is $2,695.22. Thus, the husband’s total net monthly income is-$5,553.02. The husband submitted as an exhibit a list of his monthly expenditures. The amount of those expenditures that are solely for the husband’s benefit is $3,590, In addition, however, the trial court ordered the husband to pay. monthly child support in the amount of $755, alimony to the wife in the amount of $650 per month, and the mortgage payment on the marital home in the amount of $600. Thus, including those additional amounts, his total monthly expenditures total $5,495. The husband testified that the child’s medical expenses average approximately $400 a month, although, he said, they had been greater at times. The husband was ordered to pay one-half of the child’s medical expenses that were not covered by insurance. Accordingly, including an additional $200 in the husband’s monthly expenditures (i.e., one-half of the $400 expended. each month for the child’s medical expenses), his tptal monthly expenses would increase to approximately $5,695. Based on his testimony, the husband’s monthly expenses exceed his net monthly income.
The wife presented a list of her monthly expenses, which total $2,997.50 after deducting $150 that was included for a house payment, which the husband was ordered to make. The wife included in those expenses $370 for an automobile payment and $450 for health insurance, both of which she admitted at trial were projected amounts because she was not paying either at that time. The wife also presented a list of marital assets and debts, which was entered as an exhibit and reflects varying amounts of debt incurred on four different accounts for a total of $9,818.39. The only marital assets included by the wife are the marital residence; the husband’s retirement account, which she admits on appeal is not divisible as a marital asset; and the husband’s automobile. The husband testified that the Cullman County Appraisal Office had appraised the marital residence at $91,200. According to the wife, however, the home had not been maintained since 2003, it has foundation problems, and she estimated the fair market value of the marital residence at $65,000. With regard to the parties’ vehicles, the husband testified that he had purchased a 2015 Toyota Tundra in April 2015, after he had filed for a divorce from the wife, and that his monthly payments on that vehicle are $510 a month. There was no indication of the value of the husband’s truck. The husband testified that the wife owned a 2005 Ford Expedition that had been paid for in full. The wife testified, however, that that vehicle had been involved in an accident after the parties separated, that she had received approximately $4,000 as a settlement from the other driver, that the transmission in that vehicle had. gone out in June 2014, and that she did not have a functioning vehicle at the time of the trial.
*71 According to the wife, she was working approximately 20 hours a week at the time of the trial, earning $8 an hour. She submitted a child-support-obligation income statement/affidavit indicating that she earns $693 per month. The. wife testified that, before she married the husband, she had worked at a day-care center and that she had worked some other part-time jobs, some for short periods, during the marriage. Combining the wife’s earnings with the trial court’s alimony award in the amount of $650 per month, the wife’s total monthly income is approximately $1,343, which would leave the wife with a $1,654.50 deficiency to meet her proposed monthly expenses. Unlike in Fountain or McGowin, however, the wife in the present case was awarded a much greater amount of the marital assets than the husband. The trial court awarded each party all title and interest in any vehicle in his or her respective possession and awarded the wife the marital residence, ordering the husband to make all remaining payments on the mortgage thereon. Accordingly, the wife was awarded the marital asset with the greatest value. Even assuming the marital home was worth only $65,000, as argued by the wife, we must consider that the wife was awarded the majority of the marital property and that the marital residence, after the husband makes all remaining payments on the mortgage, will be unencumbered. Thus, the wife was awarded a major asset with, at least, $65,000 in equity. In addition to the facts considered above, the husband testified in the present case that the wife had removed over $2,300 from the parties’ joint checking account in 2012 and that she had kept $661 from the parties’ 2012 tax refund. The trial court could have considered that conduct by the wife in making its monetary awards to the parties. Because the wife received a greater distribution of the marital estate than the husband and because of the additional considerations discussed with regard to the wife’s argument on this issue, we cannot agree with the wife that the trial court’s alimony award was inequitable. Accordingly, we affirm the trial court’s judgment with regard to its division of property and its alimony award to the wife.
The wife next argues on appeal that the trial court erred by failing- to award the wife attorney’s fees.
“[A]s we explained in Glover v. Glover, 678 So.2d 174, 176 (Ala. Civ. App. 1996),
‘“[wjhether to award an attorney fee in a domestic- relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala. Civ. App. 1994). “Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.” Figures v. Figures, 624 So.2d 188, 191 (Ala. Civ. App. 1993). Additionally, a trial court is presumed to have .knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala. Civ. App. 1986).’
“The circuit court had the discretion to decide whether to require the husband to pay the wife’s attorney fees. We will not reverse the circuit court’s discretionary decisions unless we are convinced that it ‘ “ ‘committed a clear or palpable error, without the correction of which manifest injustice will be done.’ ” ’ D.B. v. J.E.H., 984 So.2d 459, 462 (Ala. Civ. App. 2007) (quoting Clayton v. State, 244 *72 Ala. 10, 12, 13 So.2d 420, 422 (1942), quoting in turn 16 C.J. 453).”
Damrich v. Damrich, 178 So.3d 872, 882 (Ala. Civ. App. 2014). Given the considerations discussed above with regard to the distribution of property and award of alimony, we conclude that the trial court did not commit clear and palpable error in failing to award the wife attorney’s fees.
The wife next argues that the trial court erred in allowing the husband to claim the child as a dependent on his income-tax returns. In the present case, the wife was awarded sole physical custody of the child. The divorce judgment also provides, in pertinent part: “[The husband] shall be entitled to claim the minor child as a dependent for federal and state income tax purposes so long as he is paying the support ordered herein, and shall be allowed to claim her for the year 2015.”
In A.M.B. v. J.M.S., 12 So.3d 1221, 1222 (Ala. Civ. App. 2009), this court reversed a judgment entered by a juvenile court that, among other things, awarded sole physical custody of the child to the mother, directed the father to pay child support, and directed that the mother and the father alternate yearly regarding which parent claimed the child for income-tax purposes. We reiterated Alabama caselaw observing that the Comment to Rule 32, Ala. R. Jud. Admin., assumed that the custodial parent will take the income-tax exemptions for the children in his or her custody and that a trial court may deviate from those guidelines if that court enters a written statement explaining its deviation therefrom. Id. In accordance with Alabama law, this court reversed the juvenile court’s judgment and remanded the case to the juvenile court “for that court to either (1) ‘enter a statement explaining its deviation from the guidelines in awarding the father the tax-dependency exemption in alternating years’ (K.H.L. [v. K.G.M.], 782 So.2d [804,] 807 [ (Ala. Civ. App. 2000) ]) or (2) amend its judgment to fully conform to the guidelines by awarding the dependency exemption to the mother as the primary custodial parent (see Walls [v. Walls], 860 So.2d [352,] 359 [(Ala. Civ. App. 2003) ]).” 12 So.3d at 1222. Because the trial court in the present case also failed to indicate its reasoning for allowing the husband, as the noncustodial parent, to claim the child as a dependent for income-tax purposes, we reverse the trial court’s judgment and remand the cáse for the trial court to enter a statement explaining its deviation from the guidelines or to amend its judgment to conform with Rule 32 as discussed in A.M.B.
The wife next argues that the trial court erred in allowing the husband to retrieve the personal items “which he chooses” from the marital home within 30 days of the entry of the divorce judgment. The wife fails, however, to cite any authority in support of this argument.
‘“Rule 28(a)(10), Ala. R. App. P., requires that arguments in an appellant’s brief contain “citations to the cases, statutes, other authorities, and parts of the record relied on.”’ Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala. 2007). ‘When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research.’ City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala. 1998).”
Salter v. Moseley, 101 So.3d 242, 247 (Ala. Civ. App. 2012). Because the wife has failed to cite any authority in support of her argument on appeal, the trial court’s judgment is due to be affirmed on this issue.
*73 The wife last argues on appeal that the trial court erred in denying her postjudgment motion without holding a hearing thereon. Rule 59(g), Ala. R. Civ. P., provides, in pertinent part, that a post-judgment motion “shall not be ruled upon until the parties have had opportunity to be heard thereon.” The wife cites Kitchens v. Maye, 623 So.2d 1082, 1088 (Ala. 1993), in which our supreme court remanded a case in which the trial court had denied a postjudgment motion without first holding a hearing. In Kitchens, the appellant had twice requested a hearing on his post-judgment motion. Id. In the present case, however, the wife admits on appeal that' her motion did not include a request for a hearing. “[T]he failure to request a hearing in a postjudgment motion waives the right to such a hearing under Rule 59(g), Ala. R. Civ. P.” Antoine v. Oxmoor Preservation/One, LLC, 130 So.3d 1204, 1212 (Ala. Civ. App. 2012). Accordingly, the trial court did not err in failing to hold a hearing on the wife’s postjudgment motion.
Conclusion
Based on the foregoing, we reverse the trial court’s judgment insofar as it allowed the husband, as the noncustodial parent, to claim the child on his income-tax returns, without explanation; therefore, we remand the case for the entry of a judgment consistent with this opinion. We affirm the trial court’s judgment in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman and Donaldson, JJ., concur.
Thomas, J., recuses herself.

. Although the trial court's judgment awarded “primary physical custody” to the wife, we use the term "sole,” instead of "primary,” throughout this opinion to conform to the language provided in § 30-3-150 et. seq., Ala. Code 1975.